**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| STACY CARROLL, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 04-5245 (FLW) |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Stacy Carroll ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart (the "Commissioner"), denying her disability benefits under the Social Security Act (the "Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff contends that the record, when considered in full, substantiates her claims and requires a conclusion that she is disabled and entitled to benefits. Specifically, Plaintiff maintains that the Administrative Law Judge, Joseph A. Pachnowski (the "ALJ"), erred by failing to (1) properly apply the medical improvement standard pursuant to 20 C.F.R. § 404.1594(f), (2) make an appropriate determination regarding whether Plaintiff was engaged in substantial gainful activity, and (3) properly assess Plaintiff's residual functional capacity. For the reasons stated below, the decision of the Commissioner is affirmed and Plaintiff's Complaint is dismissed in its entirety.

1

## I.      BACKGROUND

Plaintiff, who was thirty-three years old at the time of the ALJ's decision, has a high school

education.  AR 25.  She has one child and is separated from her husband.  Id.  Since 1987, Plaintiff

has worked several jobs, including cashier positions at a CVS Pharmacy, Kentucky Fried Chicken,

a clothing store, Denny's Restaurant, and a Burger King.  Id. at 246.  She has also worked as an

"Efficient" for a medical transport company.  Id.  According to Plaintiff, she worked three to six days

a week at these various jobs.  Id.  Plaintiff also previously worked an average of five hours per day

as a cashier for JLASK Enterprises Inc. in 1997 and for 7-Eleven Inc. in 2001.  Id. at 137.  Plaintiff

noted in a Work Activity Report that while she was employed at JLASK and 7-Eleven, she  had

someone do any lifting required of her.  Id. at 139.  At the time of the ALJ hearing, Plaintiff had

worked for a year as a checkout supervisor at a Kmart in Marlton, New Jersey, where her

responsibilities included counting the checkout change drawer and making sure the cashiers turn in

and take out their bills.  Id. at 25- 26.  Plaintiff claimed that she usually worked from 4:00 to 6:00,

two to three days a week.  Id.  However, plaintiff testified that her social security payments are not

paying her bills and that she needs another source of income.[1]  Id. at 27.

Before Plaintiff's disability commenced, she was involved in a motor vehicle accident on

April 5, 1986, which resulted in an injury to her cervical region and right clavicle.  Id. at 413.

According to the record, Plaintiff has a long history of pain and discomfort.  She alleges that she is

disabled due to lower back pain from herniated discs, problems with her right knee, and

fibromyalgia.  Id. at 26.

---

[1] Despite submitting work activity reports for various jobs in connection with her application for disability
benefits, Plaintiff testified that she thinks she "had one other job in the last 10 years.  So [she doesn't] really
remember dates."  AR 27.

## A.    Procedural history

Plaintiff filed an application for disability benefits on March 10, 1994, id. at 220-221, and for supplemental security income payments on April 30, 1994, id. at 215-217, alleging a disability onset date of November 15, 1993 due to fibromyalgia syndrome.  Plaintiff's application was denied initially and upon reconsideration.  Id. at 223-238.  Plaintiff then requested a hearing before an ALJ which occurred on July 7, 1995.  Id. at 243, 431.  In an October 31, 1995 decision, Irvin N. Hackerman, the ALJ presiding over the matter, determined that Plaintiff was not disabled under the Act. Id. at 434.  Plaintiff subsequently petitioned the Social Security Appeals Council (the "Appeals Council") for review of the ALJ's decision.  Id. at 439.  The Appeals Council remanded the case to the ALJ for further proceedings.  Id. at 445-448.  On November 25, 1998, the ALJ rendered a decision in favor of Plaintiff.  Id. at 531-39.  The ALJ found Plaintiff disabled due to her inability to perform the requirements of sedentary work.  Id. at 537-38; see also id. at 40.  Specifically, the ALJ found that Plaintiff's impairments consisted of right thoracic outlet syndrome, post-traumatic fibromyalgia syndrome, muscle contraction headaches, chronic pain syndrome and status post decompression surgery for right carpal and cubital tunnel syndrome.  Id. at 537.  The ALJ recommended that Plaintiff undergo a continuing disability review within one year of the date of his decision.  Id. at 539.

Although Plaintiff filed a Report of Continuing Disability on April 15, 2000, id. at 30-39, a continuing disability review determined that Plaintiff's disability had ceased effective February 1, 2002.  Id. at 40-42.  The review noted that Plaintiff had failed to attend orthopedic and neurological examinations that were scheduled by the Social Security Administration on February 7 and 27, 2002. Id. at 41.  Consequently, on April 22, 2002, a Notice of Disability Cessation was issued.  Id. at 40-42.

Following this Notice, Plaintiff filed a Request for Reconsideration, alleging that her condition had not improved.  Id. at 44.  A Disability Hearing took place on December 11, 2002.  Id. at 56.  On October 27, 2003, the Hearing Officer determined that Plaintiff's health had improved and that she was able to work.  See id. at 74-87.  Specifically, the Hearing Officer found that based on Plaintiff's current residual functional capacity for light work activity, Plaintiff retained the ability to perform her past relevant work as a fast-food operator.  See id. at 85.

Plaintiff then requested a hearing before an ALJ, which was held on April 27, 2004.  Id. at 88-89, 199-202.  Although advised of her right to representation, Plaintiff specifically stated that she wished to proceed with the hearing without an attorney or a representative.  Id. at 24.  On July 30, 2004, the ALJ ruled against Plaintiff, finding that Plaintiff was only reasonably restricted to light work duties and that the cessation of her disability benefits was an appropriate decision.  Id. at 30-31.  Plaintiff subsequently petitioned the Appeals Council for a review of the ALJ's decision.  Id. at 12.  However, on September 8, 2004, the Appeals Council denied Plaintiff's petition, making the ALJ's July 30, 2004 decision the final decision of the Commissioner.  Id. at 9-11.  Plaintiff then initiated the current appeal on October 27, 2004, seeking reversal of the Commissioner's decision and a determination that Plaintiff is entitled to disability benefits and eligible for supplemental security income payments.

**B.    Medical evidence**

At the time of the favorable ALJ decision dated November 25, 1998 (the "Comparison Point"), Plaintiff had a history of multiple injuries sustained as a result of a motor vehicle accident in 1986.  In 1993, Dr. Burnstein, a rheumatologist, diagnosed Plaintiff with post-traumatic fibromylagia syndrome, secondary to fractured clavicle and thoracic outlet syndrome.  Id. at 387.

In an April 1994 report, Dr. Burnstein indicated that while Plaintiff experienced no limitation in sitting or standing, Plaintiff would have difficulty walking for more than several minutes at a time because of lower extremity pain.  Id. at 407.  Dr. Burnstein also noted that Plaintiff would have difficulty lifting, carrying and handling objects because of problems with her right arm, neck, and shoulder.  Id.  Furthermore, Dr. Burnstein opined that sustained concentration, persistence, social interaction and adaptation may be limited due to Plaintiff's chronic pain syndrome and sleep deprivation.  Id. at 408.  A physical therapy evaluation performed by Dr. Alicia Olivieri on June 29, 1994 revealed reduced strength in Plaintiff's right upper extremity along with reduced grip strength. Id. at 413-16.

On February, 24, 1995, Dr. Burnstein performed a clinical pain assessment of Plaintiff and found that Plaintiff's pain was "distracting to adequate performance of daily activities and work." Id. at 461.  Dr. Burnstein also found that physical activities such as walking, standing, bending, stooping, and the moving of extremities greatly increased Plaintiff's pain "to such a degree as to cause distraction from the task or even total abandonment of the task."  Id.  Moreover, Dr. Burnstein found that in an 8-hour workday, Plaintiff could sit, stand, or walk for only one hour and lift up to ten pounds occasionally.  Id. at 462.  Dr. Burnstein concluded that although Plaintiff's pain "may be less intense or less frequent in the future, it will still remain a significant element in [Plaintiff's] life."  Id. at 463.

A residual physical functional capacity assessment taken on May 4, 1995 indicated that Plaintiff was able to occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, and stand and/or walk and sit for six hours in an 8-hour workday.  Id. at 225.  As for postural limitations, Plaintiff was found to have the ability to frequently climb, stoop, kneel, crouch,

and crawl.  Id. at 226.  According to the assessment, Plaintiff had no manipulative, visual, communicative, or environmental limitations.  Id. at 227-228.

In a neurological examination of Plaintiff conducted by Dr. Charles Mehegan on October 22, 1997, Dr. Mehegan opined that Plaintiff had no sensory deficits or impairments of fine coordination. Id. at 469.  On February 27, 1998, Dr. Goldstein, Plaintiff's treating physician from 1987-1998, stated that he "do[es] not feel that [Plaintiff] qualifies for Social Security Benefits," id. at 474, because she is capable of working in sedentary and light work categories.  Id.  However, an orthopedic examination conducted in May 1998 by Dr. Gregory Maslow revealed that Plaintiff was uncomfortable both standing and sitting and was also unable to squat comfortably because of her lower back.  Id. at 492.  Dr. Maslow opined that Plaintiff was disabled by her back problems.  Id. at 493.  Dr. Maslow also conducted a medical assessment of Plaintiff with respect to her abilities to perform work-related activities and found that Plaintiff could occasionally lift and carry up to 15 pounds, stand and walk for one to two hours and sit for two to four hours, but for only one hour without interruption.  Id. at 494-95.

On June 4, 1998, Dr. William Anthony provided a medical assessment of Plaintiff that indicated Plaintiff could stand and walk for eight hours, but for only thirty minutes without interruption, and sit for eight hours, but for only fifteen minutes without interruption.  Id. at 504. However, Dr. Anthony also opined that there was no evidence of thoracic outlet syndrome based on his evaluation of Plaintiff and that Plaintiff did not meet the diagnostic criteria for fibromyalgia.  Id. at 502.

On September 8, 1999,  Plaintiff had a successful arthroscopic lateral release performed on her right knee.  Id. at 162-63.  Dr. Laura Ross, an orthopedist, noted in a follow-up evaluation of

6

Plaintiff on September 24, 1999 that while Plaintiff had a mild bulge in the lateral aspect of her knee, she was neurovascularly intact and that her incisions were well healed. Id. at 179. In another follow-up examination a few days later, Plaintiff was able to "straight leg raise" and demonstrated only "mild effusion" in her knee. Id. at 178. On February 15, 2000, Dr. Leonard Strobel, an orthopedist, noted that Plaintiff "had been improving with regards to her right knee post surgery ...." Id. at 174. By February 2001, Plaintiff's treating orthopedist at that time, Dr. Robert Taffet, noted that Plaintiff exhibited no effusion in her knee and that her patellar mobility was excellent. Id. at 165. Dr. Taffet further noted that Plaintiff showed full knee motion. Id. Bilateral x-rays taken of Plaintiff that same month indicated that Plaintiff had "normal knees." Id. at 159. Moreover, an MRI of Plaintiff's knee was taken on March 12, 2001 by Dr. Joseph Mammone, who noted that there was no evidence of any tear, effusion, or defects in Plaintiff's right knee. Id. at 157. Dr. Mammone concluded that there was "[n]o evidence of internal derangement of the right knee." Id. at 158.

Despite these medical evaluations, Plaintiff claimed in her April 15, 2000 Report of Continuing Disability that her back pain had worsened and that her knee surgery "left [her] with constant knee pain." Id. at 30. Plaintiff also noted that she has experienced more back pain since her knee surgery. Id. at 33. Plaintiff claimed that she needs assistance "vacuuming, mopping, lifting laundry baskets, and grocery shopping." Id. at 34.

In a follow-up examination conducted on June 4, 2002, by Dr. Burnstein, Plaintiff's treating rheumatologist, Plaintiff complained of back pain and difficulty walking. Id. at 190. However, in an August 9, 2002 orthopedic examination of Plaintiff, Dr. Maslow, an orthopedic surgeon previously seen by Plaintiff, opined that Plaintiff "absolutely [should] not ... be considered totally disabled on an orthopedic basis." Id. at 183.

In his 2002 report, Dr. Maslow noted that Plaintiff moved about easily although she was overweight.  Id. at 182.  The report also noted that x-rays of Plaintiff's right knee were normal, showing "no evidence of degenerative disc disease and no listhesis."  Id. at 183.  Dr. Maslow observed that Plaintiff was comfortable both sitting and standing, and that she moved about with a normal gait.  Id. at 182, 186.  Dr. Maslow further noted that Plaintiff was able to squat "fully and comfortably, and she has no obvious distress."  Id. at 182.  An examination of Plaintiff's cervical spine revealed a "full range of motion in all planes, no pain complaint and no spasm."  Id.  Dr. Maslow indicated in his report that Plaintiff also exhibited full strength and ranges of motion in both shoulders.  Id. at 182-83.  Upper extremity physical and neurological examinations revealed no abnormalities.  See id. at 183.  Moreover, a thoracic spine examination showed no tenderness and no evidence of muscular spasm in the thoracic spine.  Id.  In sum, Dr. Maslow found that Plaintiff demonstrated "no patellar instability, no effusion, no synovitis, no medial or lateral or drawer instability and no meniscal signs."  Id.  Dr. Maslow further noted that both of Plaintiff's knees showed full range of motion and that there were no abnormalities in either ankle.  Id.

According to Dr. Maslow, Plaintiff had orthopedic problems in the past, but was capable in 2002 of performing work that did not require heavy lifting.  Dr. Maslow opined that Plaintiff had "normal dexterity and could do a light duty job."  Id.  In fact, Dr. Maslow specifically stated that Plaintiff was "perfectly capable of some employment."  Id.

This was the same conclusion reached by Dr. F.J. Miranda, a state agency physician who performed a physical residual functional capacity assessment of Plaintiff on August 20, 2002.  See id. at 191-97.  According to Dr. Miranda's report, Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, stand and/or walk and sit for about six hours in an 8-hour workday,

8

and had unlimited push and/or pull capabilities.  Id. at 192.  As for Plaintiff's postural limitations, the report indicated that she could occasionally climb, balance, kneel, crouch, and crawl.  Id. at 193. Furthermore, Dr. Miranda found Plaintiff unlimited in her ability to reach in all directions.  Id. at 194.  Finally, Dr. Miranda noted that Plaintiff did not demonstrate any visual, communicative, or environmental limitations.  Id. at 194-95.

Based on Plaintiff's residual functional capacity for light work, on October 27, 2003, the Disability Hearing Officer found that there was an increase in Plaintiff's ability to perform work-related activities and that Plaintiff was able to perform her past relevant work as a fast-food operator. See id. at 83-84.

## II.     DISCUSSION

### A.     Standard of review

The Act provides that "[t] findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000).  Sentence four of § 405(g) provides: "The court shall have the power to enter, upon the pleadings or transcript of the record, or a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 592 (3d Cir.2001).  On the issue of whether there is substantial evidence to support a decision, this Court's review is "highly deferential."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir.2004).  However, it is the duty of the Court to scrutinize the entire record to determine whether the Commissioner's findings are rational and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.1978) (emphasis added).  Substantial evidence is defined as "more than a mere scintilla," but less than a

preponderance.  McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir.2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999).  Therefore, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir.1986).

**B.      Standard for entitlement of benefits**

Disability insurance benefits may not be paid under the Act unless the plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  A plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C.§ 423(d)(1)(a); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(a).

The Act establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that she is not currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental

10

ability to do basic work activities. 20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-47 n. 5. Basic work activities relate to the abilities and aptitudes necessary to do most jobs. See 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). If the claimant demonstrates that her impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied her burden of proof and is automatically entitled to benefits. See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether she retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141. If the claimant is able to perform her previous work, the claimant is determined not to be disabled. 20 C.F.R.§§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable

of performing work and not disabled.  Id.

**C.      Standard for the termination of disability benefits**

Disability benefits may be terminated or suspended on the basis of a finding that the claimant's physical or mental impairment upon which disability benefits have been granted has either ceased, does not exist, or is no longer disabling.  See 42 U.S.C. § 423(f).  Such finding must be supported by substantial evidence which demonstrates that "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity ...."  42 U.S.C. § 423(f)(1)(A).

"Medical improvement" is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [plaintiff] w[as] disabled or continued to be disabled."   20 C.F.R. § 404.1594(b)(1).   This determination must be based on changes in the symptoms, signs and/or laboratory findings associated with the claimant's impairment(s).  See id; see also 20 C.F.R.§ 404.1528.  To determine whether a medical improvement has occurred, the Commissioner is required to compare prior and current medical evidence in order to evaluate any change in the condition of the impairment.  See 20 C.F.R. §§ 404.1594(b)(7), (c)(1).   Furthermore, any medical improvement in a claimant's condition resulting in a termination of benefits must relate to the claimant's ability to work.  See 42 U.S.C.  § 423(f)(1).  Thus, where the evidence demonstrates that a medical improvement has occurred, the Commissioner must then compare the claimant's current functional capacity to her capacity at the Comparison Point in order to determine whether the medical improvement has

resulted in an increase in the claimant's ability to perform basic work activities, such as walking, standing, and other exertional and nonexertional abilities and aptitudes that are necessary to do most jobs.  See 20 C.F.R.  §§ 404.1594(c)(3)(ii), (b)(4).  Unless any resulting increase in the claimant's current residual functional capacity is based on changes in the signs, symptoms, or laboratory findings associated with the claimant's impairment, any medical improvement that may have occurred is not considered related to the ability to do work.  See 20 C.F.R. § 404.1594(c)(2).  If a medical improvement is related to the claimant's work-related abilities, the Commissioner must then establish that the claimant is able to engage in gainful activity before making a determination that the disability has ended.  20 C.F.R.  §§ 404.1594(c)(3)(i), 404.1594(b)(5).

A specific eight-step evaluation process ensures uniformity in the decisions to terminate disability benefits.  See 20 C.F.R. § 404.1594(f).  The first step of the review is to determine whether the claimant is engaging in substantial gainful activity.  See 20 C.F.R. § 404.1594(f)(1).  If she is, the second step is to determine whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment in the Impairment List.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant does not have such an impairment, the Commissioner considers at the third step whether there has been an medical improvement as defined above.  See 20 C.F.R. § 404.1594(f)(3).  If there has been medical improvement as shown by a decrease in medical severity, then the Commissioner, at the fourth step, considers whether the medical improvement is related to the claimant's ability to do work in accordance with  20 C.F.R.§§ 404.1594(b)(1)-(4) (i.e. whether or not there has been an increase in the residual functional capacity based on the impairment that was present at the Comparison Point).  See 20 C.F.R. § 404.1594(f)(4). If the medical improvement is not related to the ability to do work, then, after determining in step

five that certain exceptions do not apply, see 20 C.F.R. §§ 404.1594(d)-(e), the disability will be found to continue.  If the medical improvement is related to the ability to work, then the sixth step is to determine whether all of the claimant's current impairments in combination are severe.  See 20 C.F.R. § 404.1594(f)(6).  If the evidence shows that all of the claimant's current impairments do not significantly limit her physical or mental abilities to do basic work activities, these impairments will not be considered severe and the claimant is no longer considered disabled.  See id.; 20 C.F.R. § 404.1521.  If, however, such impairments are considered severe such that the residual functional capacity determination at step four shows significant limitation of the claimant's ability to do basic work activities, then the Commissioner must, at the seventh step, assess whether the claimant can still do work she has done in the past.  See 20 C.F.R. § 404.1594(f)(7).  If the claimant can do such past work, her disability will be found to have ended.  Id.  On the other hand, if the claimant cannot perform her past work, then the final step of the evaluation process requires the Commissioner to determine whether the claimant is able to do other work given the residual functional capacity assessment and her age, education and past work experience.  See 20 C.F.R. § 404.1594(f)(8).  If the claimant is able to do other work, her disability will be found to have ceased.  Id.

**D.    Decision and findings of the ALJ**

Here, the ALJ determined that the cessation of Plaintiff's benefits on April 22, 2002 was an appropriate decision.  See AR 21.  The ALJ determined that Plaintiff possessed the residual functional capacity to perform a wide range of light work tasks as of at least February 2002.  The ALJ concluded that Plaintiff could return to her past relevant work activities.  After consideration of the entire record, the ALJ made the following findings:

14

1.　The claimant had previously been awarded period of disability and disability insurance benefits as well as Supplemental Security Income in a decision previously issued by the undersigned Administrative Law Judge noted in the record.

2.　The claimant received cessation notice on April 22, 2002, from which she requested a reconsideration.  She was granted a Hearing Officer face to face decision which was issued on October 27, 2003, affirming cessation of her benefits.  Subsequently, on April 5, 2003, she requested a hearing in this matter.

3.　The claimant was granted a hearing in this matter on April 27, 2004.  She continued to indicate severe restrictions and multiple pains, and orthopedic problems.

4.　The claimant has multiple orthopedic problems and severe restrictions as detailed in Dr. Gregory Maslow's report of August 9, 2002.  Her residual functional capacity is reasonably restricted as a state agency reviewing physician noted on August 20, 2002.  That physician found the claimant was reasonably restricted in light work duties.

5.　The claimant had previously performed light work duties as a fast food operator.

6.　The review of the fact that she had the ability to perform light work duties as of April 22, 2002, cessation of her benefits at that time was appropriate.

7.　The claimant in the fourth step of the sequential evaluation process as of April 22, 2002, sustained the ability to perform a wide range of light work tasks and could return to her previous occupation.  Therefore, cessation of her benefits under Title II and Title XVI of the Social Security Act, at that time was appropriate.

[AR 20-21].

The ALJ's decision became the final decision of the Commissioner on July 30, 2004.  Id. at 21.

**E.　Plaintiff's claims on appeal**

Plaintiff contends that the ALJ failed (1) to apply the "medical improvement" standard applicable in cessation cases, (2) to make an appropriate determination regarding whether Plaintiff was engaged in substantial gainful activity, and (3) to properly assess Plaintiff's residual functional

15

capacity as required in steps four through eight of the evaluation process pursuant to 20 C.F.R. § 404.1594(f).  For the reasons stated below, the Court finds these arguments without merit.

### 1.     The ALJ properly applied the medical improvement standard

Plaintiff contends that the ALJ's decision did not discuss or analyze the eight-step evaluation process for medical improvement as set forth in 20 C.F.R. § 404.1594(f).  However, while the ALJ did not precisely follow the order of the eight-step process, the ALJ's evaluation, when taken as a whole, reflects consideration of the medical improvement analysis and its relation to Plaintiff's ability to work.  See Corrigan v. Barnhart, 352 F.Supp.2d 32, 43 (D.Mass.2004) (finding that there is no requirement that a decision strictly announce that it is going to use the medical improvement standard); Lewis v. Barnhart, 201 F.Supp.2d 918, 932 (N.D. Ind. 2002) (finding that strict adherence to eight-step evaluation process not necessary given ALJ's analysis of claimant's residual functional capacity).

Here, the ALJ adequately inquired into whether Plaintiff had shown medical improvement as evidenced by a decrease in medical severity.  The ALJ noted Plaintiff's subjective complaints of pain, which included her testimony regarding the disabling pain in her knees due to her fibromyalgia and the various limitations such condition has placed on her activities of daily living.  These complaints are consistent with the medical diagnoses relied upon by the ALJ in the favorable decision rendered on November 25, 1998.  For example, at the Comparison Point, Dr. Burnstein indicated that Plaintiff was limited in her movements because of problems with her right dominant upper extremity, neck and shoulder.  Dr. Burnstein further noted that Plaintiff's pain was "distracting to adequate performance of daily activities or work ...."  AR 536.  Also at the Comparison Point, Dr. Maslow indicated that Plaintiff could not stoop, crouch, kneel or crawl and that her pushing/pulling

16

abilities were limited by her impairments.  Dr. Maslow specifically opined that Plaintiff was disabled by her back problems.  Moreover, Dr. Anthony noted that Plaintiff could stand and walk for eight hours, but for only thirty minutes without interruption, and could sit for eight hours, but for only fifteen minutes without interruption.  These reports, along with other evaluations which showed reduced strength in Plaintiff's right upper extremity as well as a slight bulge in Plaintiff's lumber spine, see id. 414-15, 510, demonstrate that Plaintiff, at the Comparison Point, lacked the functional capacity to perform a full or wide range of exertional and nonexertional functions consistent with sedentary work.

Plaintiff's complaints of pain after the Comparison Point, however, are not fully consistent with the medical evidence in the record.  Although an ALJ must give a claimant's subjective complaints serious consideration and make specific findings of fact concerning such claimant's credibility, see Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.2002), such allegations of pain and other subjective symptoms must be supported by objective medical evidence.  See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999).  Here, Plaintiff claimed in a pain report dated June 3, 2002 that she was plagued by constant pain, weakness and fatigue affecting all aspects of her daily living.  She further alleged that she could not sit for more than thirty minutes and had trouble getting up and bending down.  However, Dr. Maslow's comprehensive orthopedic evaluation of Plaintiff on August 2002 revealed that Plaintiff comfortably exhibited a full range of motions.  None of the various examinations including those of Plaintiff's cervical, thoracic and lumbar spine, as well as shoulder, upper extremity, neurological, and sensory examinations demonstrated any abnormalities or impediments to Plaintiff's ability to move about without pain or spasms.  The ALJ further noted that compression testing was negative for radicular signs or symptoms and that strength testing

17

demonstrated that Plaintiff had excellent grip strength.  Finally, the ALJ noted that the x-rays taken of Plaintiff's knee during Dr. Maslow's examination revealed no evidence of acute bony trauma.

Dr. Maslow's 2002 report of Plaintiff's condition was markedly different than the report he provided at the Comparison Point.  In 1998, Dr. Maslow specifically opined that Plaintiff was disabled due to her back problems.  In fact, Dr. Maslow had previously reported that Plaintiff had sciatica and ulnar neoropraxia on her right side.  He also noted that in an orthopedic examination, Plaintiff was visibly uncomfortable both standing and sitting and was also unable to squat comfortably because of her lower back.  Dr. Maslow's most recent examination of Plaintiff, however, revealed no physical abnormalities and did not state that Plaintiff was restricted in her ability to move about.

Furthermore, although Plaintiff was previously found to be able to stand and walk for only one to two hours and sit for two to four hours, but for only one hour without interruption, the ALJ noted that Dr. Miranda, the state agency physician, opined in Plaintiff's 2002 physical residual functional capacity assessment that Plaintiff had the ability to carry ten pounds frequently and twenty pounds occasionally, and could sit, stand and/or walk for six hours in an 8-hour workday with just normal breaks.

Plaintiff here neither disputes the contents of the medical reports taken after the Comparison Point nor claims that such reports do not support a finding that there was a decrease in the medical severity of her condition.  Instead, Plaintiff merely alleges that the ALJ failed to mention any of the 84 medical exhibits in Plaintiff's file.  See Pl. Br. at 10.  However, as discussed above, the ALJ provided a thorough discussion of the results of Plaintiff's 2002 orthopedic evaluation, as well as Plaintiff's 2002 functional capacity assessment, and on the basis of these reports, found that

Plaintiff's subjective complaints of pain, which were previously supported by the medical evidence at the Comparison Point, were now unsupported by the record. Therefore, the Court finds that there was substantial evidence in the record supporting the ALJ's determination that, based on the opinions of Plaintiff's treating and consulting physicians before and after the Comparison Point, there was a medical improvement in Plaintiff's condition as shown by a decrease in medical severity.

**2.      The finding of medical improvement was related to Plaintiff's ability to work**

The Court also finds without merit Plaintiff's contention that the ALJ failed to demonstrate that Plaintiff's medical improvement was related to her ability to work. In order to determine whether the medical improvement has resulted in an increase in a claimant's ability to do basic work activities, the claimant's current residual functional capacity must be compared with her capacity at the Comparison Point. See 20 C.F.R. § 404.1594(c)(3)(ii). Residual functional capacity is the ability to perform basic work-related activities on a regular and continuing basis. See 20 C.F.R. § 404.1545(b); see also 20 C.F.R. § 404.1545(a) (defining residual functional capacity as any work one may continue to perform in spite of physical or mental impairments and related symptoms). Here, at the Comparison Point, the ALJ found that because of her impairments, Plaintiff did not have "the ability to maintain attention, concentration, persistence and pace as a result of pain on a sustained basis." AR 537. Therefore, Plaintiff was found to lack the residual functional capacity to perform the functions consistent with sedentary work. However, at the time of the ALJ hearing in 2004, Plaintiff had already been working for a full year at a Kmart store where she performed light work duties two or three days a week for four to six hours per day - a total of eight to eighteen hours per week. This work activity, coupled with the 2002 residual functional capacity assessments of Dr.

Maslow and Dr. Miranda, demonstrated that Plaintiff was capable of performing light work activity.[2]

In addition, Plaintiff's previous employment in a light work capacity as a fast food operator lends

support to the ALJ's determination that Plaintiff sustained the ability to perform light work tasks and

could return to her past relevant work activities.

The Court notes that Plaintiff's testimony before the Disability Hearing Officer in 2003 and

her Kmart pay records contradict Plaintiff's assertions of her disabling limitations.  Plaintiff testified

in 2003 that she was disabled due to low back pain, right knee pain and headaches.  See AR 78, 80.

However, Plaintiff admitted at the disability hearing that her back pain is generally relieved through

the use of medication and the adjustment of her positioning.  See id. at 80.  Moreover, the fact that

Plaintiff can wash dishes, do laundry, and shop for groceries without difficulty, see id. at 78, shows

that Plaintiff is capable of light work activity.  In addition, while Plaintiff claimed that she worked

a total of eight to eighteen hours per week at Kmart (resulting in an average of sixteen to thirty-six

hours for two weeks), her pay records show that Plaintiff frequently worked much more in a two-

week period.  See id. at 112 (76.50 hours); id. at 114 (62.25 hours); id. at 115 (53.75 hours); id. at

116 (46.50 hours); id. at 117 (48.75 hours); id. at 118 (58.25 hours); id. at 120 (52.75 hours); id. at

122 (53.50 hours).  This evidence of Plaintiff's work activity belies her assertion that she is entitled

to disability benefits because she is unable to sustain employment, even if it involves light work

activity.

Because the record demonstrates that Plaintiff was capable of performing basic work

activities on a regular and continuing basis, the Court finds that there is substantial evidence

---

[2] "Light work" involves mostly walking and standing, frequently lifting and carrying items that weigh up to ten pounds, and occasionally lifting and carrying items that weigh up to twenty pounds.  See 20 C.F.R. § 404.1567(b).

supporting the determination that there was an increase in Plaintiff's residual functional capacity based on the impairments that were present at the time of the Comparison Point, and thus, that Plaintiff was able to perform a wide range of light work duties as of April 2002 and could return to her past relevant work activities.[3]

### 3.    Plaintiff's "substantial gainful activity" argument is misplaced

Plaintiff contends that because "[t]he record is totally devoid of any analysis of ... whether the claimant's attempt ... to work constitutes 'substantial gainful activity,'" Pl. Br. at 11, "the Commissioner cannot be said to have satisfied the exceptions to the medical improvement standard by finding that the claimant is engaged in substantial gainful activity." Id. at 12.  The Court finds this argument misplaced.  First, the ALJ did not conclude that Plaintiff's disability had ended because Plaintiff engaged in substantial gainful activity.[4]  Under 20 C.F.R. § 404.1594(d),[5] a disability will be found to have ended even though medical improvement has not occurred, if the claimant can engage in substantial gainful activity.  This subsection is an exception to the finding of medical improvement to justify the cessation of disability benefits under 20 C.F.R. § 404.1594. In this matter, however, the ALJ specifically noted that there <u>had</u> been medical improvement related

---

[3]  If the medical improvement is found to be related to the ability to work, step six of the eight-step evaluation process under 20 C.F.R. § 404.1594(f) is to determine whether a claimant's current impairments in combination are severe.  <u>See</u> 20 C.F.R. § 404.1594(f)(6).  While the ALJ in this matter did not specifically discuss this step in the evaluation process, his analysis reflects consideration of the relevant issues.  For example, the ALJ noted that Plaintiff continues to have severe orthopedic restrictions, but that these restrictions only "reasonably restrict [Plaintiff] to performing ... light work tasks." AR 20.  Because Plaintiff's residual functional capacity did not show a <u>significant</u> limitation on her ability to do basic work activities, her impairments were not severe and the ALJ properly concluded that the cessation of Plaintiff's disability benefits as of April 2002 was an appropriate decision.

[4]  Substantial gainful activity "is work activity that involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when [the claimant] worked before."  20 C.F.R. § 404.1572(a).

[5]  Plaintiff refers to 42 U.S.C. § 423(f) for the proposition that an individual benefit's can be terminated even if no medical improvement is found if the individual is engaged in substantial gainful activity.

to Plaintiff's ability to work and thus an increase in Plaintiff's residual functional capacity for light work activity since the Comparison Point.  Therefore, because the ALJ already found that there was medical improvement, the ALJ did not have to find that Plaintiff engaged in substantial gainful activity in order to determine that Plaintiff's disability had ended.

Second, the ALJ's decision is not "devoid" of a substantial gainful activity analysis.  Although the ALJ did not specifically state that Plaintiff was capable of substantial gainful activity, the ALJ provided a detailed analysis of Plaintiff's medical evaluations as well as Plaintiff's testimony regarding her physical limitations and determined that Plaintiff could be employed in a light work capacity.  Furthermore, the ALJ specifically noted Plaintiff's employment at Kmart where she had already performed light work duties for more hours than she initially testified to during the ALJ hearing.  Therefore, the ALJ properly assessed Plaintiff's ability to engage in substantial gainful activity.  See 20 C.F.R. § 404.1594(b)(5).

### III.    CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence in the record.  Therefore, the ALJ's decision will be affirmed, and Plaintiff's Complaint shall be dismissed in its entirety.  The Court shall issue an appropriate Order.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: October 11 , 2005

22